# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>$28,000.00 IN U.S. CURRENCY,<br><br>    Defendant. | CASE NO. 10CV2378-LAB (KSC)<br><br>**ORDER:**<br><br>**1) GRANTING DEFENDANT'S MOTIONS TO SUPPRESS AND FOR SUMMARY JUDGMENT; AND**<br><br>**2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO STRIKE CLAIM** |

Before the Court are dueling Motions for Summary Judgment, Defendant-Claimant's Motion to Suppress Evidence, and the Government's Motion to Strike Defendant-Claimant's claim. As explained below, the Court finds that the Motion to Suppress is dispositive of the litigation, and accordingly grants that motion and the Defendant-Claimant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

The salient facts are undisputed. With a warrant for his arrest, federal agents arrested Robert Moser on June 25, 2010 in the garage of his home in Encinitas, California. Before transporting Moser to jail, the agents escorted him into his home so he could retrieve medications he was currently taking. While inside the house, the agents asked Moser whether he had any weapons. Moser revealed that there was a loaded handgun under his mattress, and the agents seized it.

1       The federal agents summoned Brian Bloomberg, a local San Diego County Deputy Sheriff, to take custody of the gun. When Deputy Bloomberg arrived in the garage, he smelled marijuana. Deputy Bloomberg asked Moser, who was sitting handcuffed in a chair, if there was marijuana in the garage. Moser initially said "no," but after the deputy pressed the point Moser nodded toward a large plastic trash bag. Deputy Bloomberg opened the bag and discovered remnants of marijuana plants inside.

        After finding the plant remnants, Deputy Bloomberg took a closer look around the garage. He noticed modified air ducts and a recirculating water pump, which he recognized as equipment used for cultivating marijuana indoors. Through an open door leading from the garage into the house, he also spotted a number of $CO_2$ canisters, which are also used in indoor marijuana cultivation. Deputy Bloomberg then turned back to Moser and asked him "Are you growing weed in this house?" Moser didn't respond initially, but when Bloomberg repeated the question Moser said he was.

        At that point, Deputy Bloomberg and one of the federal agents entered the house to look around. In addition to other marijuana cultivating equipment, they discovered a large number of live marijuana plants in a downstairs bedroom.

        Upon discovering the marijuana, Deputy Bloomberg called for assistance from Narcotics Task Force Officer Steve Reed.  When Reed arrived at the residence, he entered and conducted his own inspection of the marijuana and the equipment. Reed then asked Moser, who remained handcuffed in the garage, for consent to search the house. After initially balking, Moser consented to the search when Reed informed him he would obtain a search warrant, which could take up to 3 hours. Reed then reentered the house and discovered additional marijuana and $28,000 in currency.

        It is uncontested that Moser was not given Miranda warnings before he responded to Deputy Bloomberg's question whether there was marijuana in the garage. It is likewise uncontested that neither Deputy Bloomberg nor Narcotics Task Force Officer Reed obtained either a search warrant or Moser's consent before they initially entered the residence to look around.

LEGAL ANALYSIS AND CONCLUSIONS

        In all but exceptional circumstances, police must obtain a search warrant before entering and searching a person's home. No search warrant was obtained in this case.

//

1    The search warrant requirement may be excused when a person with authority to consent
2 voluntarily permits the police to search without a warrant. But if that consent is given after an initial
3 illegal search, evidence obtained is tainted by the illegality and is inadmissible, unless subsequent
4 events have purged or attenuated the taint. *United States v. Bautista*, 362 F.3d 584, 592 (9th Cir. 2004);
5 *United States v. Chavez-Valenzuela*, 269 F.3d 719, 727 9th Cir. 2001, *amended by* 279 F.3d 1062
6 (2002); *United State s v. Hotal*, 143 F.3d 1223, 1228 (9th Cir. 1998) ("Consent to search that is given
7 after an illegal entry is tainted and invalid under the Fourth Amendment.").

8    Whether the initial taint of an illegal search has been purged or attenuated depends on three
9 questions: (1) What is the temporal proximity between the illegal search and the consent?; (2) Are
10 there intervening circumstances that break or disrupt the causal connection between the illegal search
11 and the consent?; and (3) How flagrant was the official misconduct? *Chavez-Valenzuela*, 268 F.3d
12 727-728; *See United States v. Washington*. 387 F.3d 1060, 1073-1077 (9th Cir. 2004) (applying test).

13    The lack of a significant intervening period of time between the illegal search and the
14 subsequent consent is not dispositive, but it does bear directly on the probability of taint. *United States*
15 *v. Delgadillo-Velasquez*, 856 F.2d 1292, 1299 (9th Cir. 1988), *overruled on other grounds, United*
16 *States v. Johnson*, 256 F.3d 895 (2001) (en banc). Here, the temporal proximity between Deputy
17 Bloomberg's initial unauthorized entry and search of Moser's home, and Officer Reed's similarly
18 unauthorized initial entry and search, weighs in favor of suppressing the $28,000. Although the record
19 before the Court does not contain a precise time sequence of the events, it is readily apparent that both
20 Deputy Bloomberg and Officer Reed entered Moser's residence minutes after they respectively arrived
21 on the scene. Reed remained in the house for approximately 15 minutes before he spoke with Moser
22 in the garage and obtained his consent to search. Such little time between the officers' initial illegal
23 entries of the home and Moser's subsequent consent is insufficient to purge or attenuate the taint of
24 those illegalities. Knowing the officers had found the marijuana grow, Moser must have concluded
25 the gig was up and that there was little reason to withhold consent.

26    Intervening circumstances that purge or attenuate an illegal search must be sufficiently
27 independent of the search to show the tainted evidence — here the $28,000 — was "come at by way
28 of" some process other than the illegal search. *United States v. Crawford*, 372 F.3d 1048, 1054 (9th

1  Cir. 2004) (en banc). Examples include release from custody, an appearance before a magistrate, or
2  consultation with an attorney.  In these circumstances, it is reasonable to assume that the consent was
3  an unconstrained and independent decision that was completely unrelated to the initial unlawful
4  search. *United States v. George*, 883 F.2d 1407, 1416 (9th Cir. 1989). Obviously, the above examples
5  don't apply here, nor are any other intervening factors apparent. To the contrary, Moser's consent in
6  this case followed closely on the heels of serial constitutional violations including ignoring the
7  requirement to advise him of Miranda rights before questioning him about the marijuana and illegally
8  entering and reentering Moser's home without a search warrant.

9  The Court also finds the constitutional violations that preceded Moser's consent were
10 purposeful and flagrant. There is no suggestion here that either Deputy Bloomberg or Officer Reed
11 believed that they were acting under the authority of a search warrant when they entered Moser's
12 home. And even if they were uninformed or confused about the existence of a search warrant, the
13 federal agents were present during both of their searches (even accompanying Deputy Bloomberg on
14 the first occasion) and did not inform their state counterparts that no search warrant had been obtained.
15 Moser's earlier limited consent to enter the home for the purpose of escorting him to retrieve his
16 medication did not authorize the subsequent entries to search for marijuana and evidence of other
17 crimes.

18 There is really nothing, then, to purge or attenuate the taint of the initial illegal searches of
19 Moser's home. Moser's consent to search was tainted by those initial constitutional violations. The
20 Court concludes that the $28,000 must therefore be suppressed.

## CONCLUSION

22 Defendant-Claimant's motion to suppress is **GRANTED.**  It necessarily follows that there is
23 insufficient evidence to create a triable issue of fact that the money is subject to forfeiture by the
24 government. Accordingly, Defendant-Claimant's motion for Summary Judgment is also **GRANTED.**
25 //
26 //
27 //
28 //

Plaintiff's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion to Strike the Claim is **DENIED** as moot.  The Clerk is ordered to close this docket.

    **IT IS SO ORDERED**.

DATED: March 29, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge