# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

$28,000.00 IN U.S. CURRENCY,

Defendants.

CASE NO. 10CV2378-LAB (CAB)

**ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES**

In this forfeiture case, Claimant Robert Moser successfully obtained return of the Defendant currency, and moved pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA) for attorney's fees of over $50,000. The government filed an opposition, arguing that if fees are awarded, they should be reduced. Moser also requested costs, but those have already been taxed. What is at issue here is a fee award only. The parties are familiar with the procedural history, which is not repeated here except as necessary in the course of discussion.

There is no real dispute here that Moser substantially prevailed and is eligible for a fee award under CAFRA. The focus of the briefing is on the amount of the award. Moser, as the party seeking a fee award, bears the burden of showing he is entitled to it and what it should be. *See Harris v. Maricopa County Superior Court*, 631 F.3d 963, 971–72 (9th Cir.

2011) (in cases involving attorney's fees generally, the burden falls solely on the claimant). *See also Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (burden on claimant to show what reasonable hourly rate was).

The government seeks to limit the award to the fees actually provided for under the retainer agreement, while Moser argues the lodestar approach should be used, which would likely result in a higher award. The government cites *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011) for the principle that the fee agreement can be considered when determining a reasonable fee in CAFRA cases. Moser does not dispute this, but rightly points out that the payment provided in the fee agreement is not a cap. *Id*. at 755. Moser is also correct that the lodestar method is to be used. *See id.* at 754–55. The statutory language, providing for an award of fees "incurred by the claimant" does not limit the award to actual fees. *See Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989) (when using lodestar method, fee award was not limited to contingent-free agreement between attorney and client).

Using the lodestar method, the Court first makes an initial estimate of reasonable fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blanchard*, 489 U.S. at 94 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The initial estimate may then be adjusted based on other factors, known as *Johnson* factors after *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). *See Blanchard*, 489 U.S. at 94; *see also id.* at 91–92 (discussing Congress' reliance on *Johnson* factors). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. (These are also known as *Kerr* factors, after *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).) Reasonable fees are adequate to attract

competent counsel, but do not produce windfalls to attorneys. *Blanchard*, 489 U.S. at 92 n.6 (citing legislative history).

**Reasonable Hourly Rate**

Moser's briefing focuses a great deal on the hourly rate. He argues that the relevant comparison is to "federal practitioners possessing high levels of skill and experience" in the greater San Diego legal communities. While Moser's counsel, Richard Barnett, cites evidence he is very experienced and has been identified as an expert in forfeiture law, the question is really what level of skill, training, and experience was required in this case. *See Blum*, 465 U.S. at 886 n. 11 (reasonable rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation") (emphasis added). Moser cites evidence that similarly experienced counsel in civil forfeiture cases in this District customarily bill from $400 to $700 per hour. (Fee Mot. at 6:17–26.) The evidence, however, suggests this is the customary rate of litigators in various types of cases, not just civil forfeitures. In other words, the customary fees represent an average for all types of litigation work. Some areas (*e.g.*, patent or securities) obviously command higher fees than others (*e.g.*, criminal defense in drug cases). It is therefore not a particularly accurate representation of what the going rate is in this market for this type of work.

While this was a civil forfeiture case, the central issue was the legality of a search and seizure. The heart of this case was a motion to suppress. In this respect, the legal skills required are more similar to those of a criminal defense attorney. The law governing forfeitures did come into play, but the focus here was on criminal procedure much more than forfeiture law. After the initial client interview, this would have been obvious to Barnett or any other attorney practicing in this field. Defense attorneys' customary rates in this District are not as high as the rates Moser urges are the norm in forfeiture cases. For example, CJA panel members are required to be experienced and well-trained, yet the CJA hourly rate for appointed counsel in non-capital cases in this District is $125.

/ / /

It is also worth remembering that much of the work in a case like this is fairly routine, and the degree of expertise required for those tasks is much lower. Typically, lawyers who work in firms delegate this work to junior associates or paralegals, who bill at lower rates. Some work is delegated to staff who do not bill at all, and their cost is reflected in the attorneys' billing rates. Many of the lawyers whose declarations Moser relies on fall into this category; while they themselves might charge rates of $400 to $700 per hour, they would as a matter of course delegate work so that bills are reasonable. For example, Barnett not only interviewed Moser, made appearances before the magistrate, communicated with opposing counsel, and directed litigation strategy, all typically carried out by more experienced counsel; but he also compiled exhibits, drafted responses to interrogatories, and researched and drafted whole pleadings,[1] tasks typically carried out for the most part by more junior staff.

If Barnett had delegated work as is typical in larger law offices and firms, his requested rate of $500 per hour might be reasonable. Had he done so, he would also have submitted billings from attorneys or paralegals with lower billing rates, and the average hourly billing rate for the entire case would have been quite a bit less than $500. A case Moser himself cites illustrates this point. In *United States v. 4,432 Mastercases of Cigarettes*, 322 F. Supp. 2d 1075, 1078–79 (C.D.Cal., 2004), *vacated on other grounds*, 448 F.3d 1168 (9th Cir. 2006), the court held that the requested $400 hourly rate was reasonable. That decision, however, found the $400 rate was reasonable for lead counsel and co-counsel only; the two associates were billed at $195 per hour. *Compare Gold v. NCO Financial Systems, Inc.*, 2010 WL 3339498 at *2–*3 (S.D.Cal., Aug. 23, 2010) (determining reasonable fees for attorneys and a paralegal).

---

[1] A very experienced civil forfeiture attorney would be expected to be familiar with basic elements to be included in pleadings such as a notice of claim, a motion to suppress, an opposition to a motion to dismiss or strike, and a fee motion. Experienced practitioners typically keep exemplars of pleadings drafted in earlier cases, and update them or make changes as needed. Associates are tasked with drafting, basic research, and proofing of motions, and the more senior attorney drawing on his expertise identifies legal theories, directs the associate, reviews drafts, and approves the final draft. Where this method is used, the senior attorney's hours are reduced but a higher hourly rate is justified.

While delegation of less-expert tasks is not required in the practice of law, an attorney who does all levels of work — the demanding and sophisticated as well as the basic and routine — would typically bill at a lower hourly rate than one who does only the most difficult work. This avoids "top-heavy" billing that the market will not support. *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008) (approving district court's reduction of lodestar amount to account for "top-heavy billing"). Because Barnett did all the legal work here, a reasonable rate is lower.

What that rate should be is less certain. The government's brief does not address the question of what a reasonable rate for Barnett would be. Barnett does not identify any case, whether a forfeiture case or any other kind, approving any hourly rate for him, and the Court's own search of caselaw revealed none.[2] Bearing in mind Barnett's discussion of his extensive work in forfeiture cases, the absence of any record of a fee award for his work is somewhat surprising. He doesn't say what his own customary rate is, but his fee agreement with Moser shows he was willing to litigate this case for 1/3 of the total Moser recovered, meaning he could not reasonably expect to collect more than about $9300 in fees from his client. Even assuming (as discussed below) Barnett expected the case to be resolved more quickly and the large number of hours he devoted to the case was justified by the government's overlitigation of the issues, he would have had to resolve this case in under 19 hours (instead of the more than 100 hours it actually took) to earn a $500 hourly fee.

Obviously there is some reasonable rate, but in this case it is not $500 per hour, nor has Moser given a plausible basis for calculating an alternative rate. The Court, based on its knowledge of the legal market as well as the evidence, will therefore determine what the reasonable rate is. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (approving district court's reliance, in part, on its own knowledge and experience of legal market to

/ / /

[2] The affidavit of Eric Honig, attached as Exhibit D to the motion, explains that the community of civil forfeiture practitioners assisting private claimants in Southern California is very small. Honig himself says he was the first attorney in the country to obtain a fee award in a similar case.

determine reasonable rate). Because it was Moser's burden to show what the reasonable rate was, the Court will be conservative in its determination.

Moser's motion relies in part on the declaration of Eric Honig. Honig's declaration points out that in 2003, he obtained a fee award at an "enhanced rate of $300 per hour" in the Central District of California. (Motion, Ex. D, ¶ 13.) While this was seven to nine years before Barnett performed his work[3] and rates have increased since then, it is also true that rates are generally higher in the Central District than in this District. It also bears mention that in that case Honig submitted evidence that the prevailing rates were $350 to $600 per hour yet Honig's hourly rate was $300, and that of his co-counsel was $225. This, then, can serve as a reference point for a reasonable rate in this District.[4] Honig also cites cases in which he was awarded fees at a much higher rate, but these were more complex cases, requiring more expertise in civil forfeiture procedure than this case.

The Court therefore determines that, while Barnett might command a higher rate in other cases, a reasonable hourly rate in this case was no more than $300.

**Hours Reasonably Expended**

The motion documents over 100 hours of work on the claim in this case, which is surprisingly high. In its order granting Moser's claim, the Court noted that this was really a rather straightforward case, and held that the constitutional violations requiring suppression were obvious. Barnett, upon learning the facts, might well have assumed the government would settle quickly and on terms very favorable to his client.

The claim was not settled however. The government, for reasons that are not clear, obstinately opposed the claim. The government, not satisfied with merely opposing his claim, filed a motion to strike it. The basis for that motion was the specious suggestion that there

/ / /

/ / /

---

[3] Barnett's billings run from August 20, 2010 to April 11, 2012. He requests the $500 hourly rate for the entire period.

[4] The Court is also permitted to consider awards in other cases as one of the *Johnson* factors.

wasn't sufficient evidence the $28,000 seized in Moser's home belonged to him.[5] The government continued to oppose Moser at every turn, and Moser responded in kind. In other words, after the case began, the government's unnecessarily aggressive posture forced Moser to choose whether to expend effort to continue litigating or cut his losses and forfeit the $28,000.

While the government's obstinacy and aggressive litigation may have required Barnett to undertake tasks that would otherwise have been unnecessary, there is no reason why Barnett should have spent so much time on those tasks. In other words, it appears Barnett gave the government's litigation work more respect than it deserved. Seasoned attorneys skilled in the management of cases are expected to be able to gauge the appropriate level of response to opposing counsel's maneuvers. They are expected to recognize and succinctly point out weak arguments, rather than expending effort disproportionate to the arguments' persuasive power. Rather than responding in kind and point-by-point to lengthy briefs, experienced counsel should know when a more measured response is appropriate. In other words, experienced counsel are expected to make reasonable independent judgments about how to litigate the case, rather than allowing opposing counsel to set the agenda and dictate their use of resources. This is easier said than done, of course, and even experienced counsel miscalculate sometimes, but the standard here is reasonableness.

The Court has reviewed Barnett's billing entries. To his credit, on some occasions, he cuts his hours, a common practice to account for work done in good faith that later proves to have been unnecessary. The billing entries, however, also include numerous items that suggest the time spent and billed was unnecessarily high for an attorney experienced in civil forfeitures and criminal procedure; too much time was billed for matters that are familiar to all experienced federal litigators. For example, the government's opposition to Moser's motion for summary judgment was mostly directed at marshaling the evidence. Then two

[5] It isn't clear why the government brought this motion, but the only required response was to show that the money was Moser's and not someone else's. Moser's opposition did that in just a few pages, but then went on to debate at length the government's brief over the adequacy of Moser's objections to numerous special interrogatories. In all, the body of the opposition ran 30 pages, and an additional 161 pages of exhibits were attached.

pages was spent attempting to show Moser hadn't met the well-known standards for summary judgment. The standards the government cites are well-known and in no way novel or complex. Barnett's billing entries on September 22 and 23, 2011 show he spent 6.75 hours drafting a reply brief to the opposition, and also researching Fed. R. Civ. P. 56. Here, a succinct reply brief showing that the government's evidence was inadmissible would have been sufficient, and it is unclear why research on the Rule 56 standards was required.

To cite a second example, Barnett's attorney's fees motion was lengthy and supported by several declarations, and he also filed a ten-page reply to the government's opposition. But, as discussed above, his briefing omitted some key points, touched on others only in passing, and expended effort on favorable but less than apt comparisons.

This is not to say Barnett in any way acted improperly by conducting extra research, confirming his understanding of basic legal principles, or familiarizing himself with tangential aspects of the case. Succinct briefing is preferred. *See, e.g., Gillespie v. Astrue*, 2012 WL 183206, slip op. at *3 (E.D.Tenn., Jan. 18, 2012) ("Plaintiff's counsel, in the manner which is always appreciated by this Court, makes a succinct argument. ") That is not to say attorneys err by devoting more time and words to briefing, particularly where the likely ruling on particular points is in doubt, and the Court is aware that cases look simpler in hindsight. But here, it should have been clear even *ex ante* that not all the billed work was reasonably necessary to prosecute Moser's claim. Because the billing entries are generalized by task, the Court cannot say with any certainty how much of each day's work was reasonably necessary. The Court therefore relies on its own experience, *see Ingram*, 647 F.3d at 928, and estimates that no more than 60 hours were reasonably expended on the work.

**Lodestar**

Based on the Court's determinations of a reasonable hourly rate and hours reasonably expended, the Court calculates the lodestar figure at $18,000. This figure is necessarily somewhat crudely determined, because of Moser's failure to carry his burden as fully as he should have. But it does not matter much in this case if it is somewhat inaccurate, because the Court will adjust it downward after considering the *Johnson* factors.

***Johnson* Factors and Adjustments**

The lodestar figure is presumptively reasonable, *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987), and courts do not frequently adjust it after it is calculated. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994). Some of the *Johnson* (or *Kerr*) factors are subsumed within the lodestar calculation, and are therefore not used to adjust the lodestar figure after it is calculated. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). Of those that are not subsumed within the lodestar figure, only the relevant ones need to be considered. *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1994) (district court should take into account *Kerr* factors it finds to be relevant).

The Court has already considered the time and labor required; the novelty and difficulty of the questions; the required skill level; and Barnett's experience, reputation, and abilities. There have been relatively few fee awards under CAFRA, and neither party has pointed to a case similar to this one where a fee award was made.

The remaining relevant factors are the customary fee, whether the fee is fixed or contingent, the amount involved, and the "undesirability" of the case. These all boil down to a limited set of facts, namely that Barnett knew Moser could not recover more than $28,000, and he agreed in a contingent fee agreement to accept 1/3 of the total recovery as his fee.

Civil forfeiture cases involve a variety of types of property and a wide range of property values. Within this range, a claim for $28,000 is not as lucrative as some, but a contingency fee agreement would be enough to attract competent counsel. *See Blanchard*, 489 U.S. at 92 n.6 . It is not such an undesirable case that a higher fee award is merited in order to encourage attorneys to undertake the representation.

The Court finds very significant the fact that Barnett was willing to undertake the representation for no more than $9,333.33 plus costs. He might have expected it to settle quickly, based on the strength of Moser's suppression argument. But there was no assurance of that. He might also have hoped for an award of fees under CAFRA. But he would have been aware that fee awards are not common, and also that they are not intended to produce a bounty for attorneys. *See Blanchard*, 489 U.S. at 92 n.6. The logical

and reasonable inference here is that Barnett and Moser agreed to a fee of no more than about $9300.

It is also significant that this was a contingent fee agreement. The fraction of the recovery that goes to the attorney under such agreements typically compensates the attorney not only for work done in cases where his client prevails, but also covers the attorney's losses in cases where the client recovers little or nothing. In other words, it is adjusted upwards to account for risk. The $9,333 figure can be presumed to be higher than what Barnett would charge if there were no risk, *i.e.*, if Moser had guaranteed payment regardless of the outcome.

While the Court recognizes that this figure is not a cap on the award, it is nevertheless relevant. *See $186,416.00 in U.S. Currency*, 642 F.3d at 755 (court may consider fee agreement when determining reasonable fee award). Bearing in mind the relevant *Johnson* factors, the Court determines that a fee award of $18,000 is excessive, but an award of $14,000 is reasonable.

**To Whom Is the Award Made?**

Moser's motion argues the fee award should be made directly to Barnett, while the government argues any award should be made to Moser. It is unclear why the parties are disputing this at all, much less why it should have been the subject of substantial argument.

CAFRA fee awards ordinarily are made to the claimant. *$186,416.00 in U.S. Currency*, 642 F.3d at 755–56 (citing *Astrue v. Ratliff*, 130 S.Ct. 2521 (2010)). But they may, as here, be contractually assigned to the claimant's counsel. *Id.*, 642 F.3d at 756 (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir. 1999) ("In the absence of a contractual assignment to counsel, § 1988 requires that attorney fee awards be made directly to the prevailing party.")) Because Moser assigned any fee award to Barnett, the award should be made to Barnett.

/ / /

/ / /

/ / /

**Conclusion and Order**

For the reasons discussed above, the Court finds Richard Barnett, Esq. is the assignee of Claimant Moser, the prevailing party. The Court **AWARDS** Barnett, Esq., attorney's fees under CAFRA, in the amount of $14,000.

**IT IS SO ORDERED**.

DATED: February 11, 2013

Larry A. Burns

**HONORABLE LARRY ALAN BURNS**
United States District Judge